RECEIVED

NOV 1 9 2002

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

NOV 1 9 2002

ROBERT H. SHEMWELL, CLERK
BY _____
                 DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE/OPELOUSAS DIVISION

| | | |
|---|---|---|
| TROY J. LEMAIRE and | § | CIVIL ACTION NO. CV02-2005-LO |
| JOSEPH C. ROBERTS, JR. | § | |
| | § | |
| VS. | § | JUDGE DOHERTY |
| | § | |
| HALLIBURTON ENERGY SERVICES, | § | MAG. JUDGE HILL |
| INC. | | |

## DEFENDANT'S MOTION TO COMPEL
## ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS

Defendant, Halliburton Energy Services, Inc. ("Halliburton"), through undersigned counsel, moves the Court to compel arbitration and to dismiss or stay these proceedings. In support of this motion, Halliburton has filed herewith a memorandum, explaining in detail the reasons why this motion should promptly be granted.

WHEREFORE, Halliburton prays that the Court grant this motion.

Respectfully submitted this *18th* day of November, 2002.

_____
CHARLES H. HOLLIS     (LA. #06961)
SAMUEL ZURIK III, T.A.  (LA. #24716)
BENJAMIN H. BANTA     (LA. #24289)
**THE KULLMAN FIRM**
1100 Poydras Street, Suite 1600
New Orleans, LA 70163
Telephone: (504) 524-4162
Facsimile: (504) 596-4114

ATTORNEYS FOR DEFENDANT,
HALLIBURTON ENERGY SERVICES, INC.



U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

NOV 1 9 2002

ROBERT H. SHEMWELL, CLERK
BY_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| TROY J. LEMAIRE and | § | CIVIL ACTION NO. CV02-2005-L0 |
| JOSEPH C. ROBERTS, JR. | § | |
| | § | |
| VS. | § | JUDGE DOHERTY |
| | § | |
| HALLIBURTON ENERGY SERVICES, | § | |
| INC. | § | MAG. JUDGE HILL |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS

CHARLES H. HOLLIS     (La. #06961)
SAMUEL ZURIK III, T.A.  (La. #24716)
BENJAMIN H. BANTA     (La. #24289)
**THE KULLMAN FIRM**
1100 Poydras Street, Suite 1600
New Orleans, LA 70163
Telephone: (504) 524-4162
Facsimile: (504) 596-4114

ATTORNEYS FOR DEFENDANT,
HALLIBURTON ENERGY SERVICES, INC.

# **TABLE OF CONTENTS**

**Page No.**

Table of Authorities ............................................................................................... ii

I.      Introduction .............................................................................................. 1

II.     Facts ........................................................................................................ 1

      A.   Plaintiffs' Employment With Halliburton and Their
          Agreements to Arbitrate Pursuant to the Halliburton
          Dispute Resolution Program ............................................................ 1

      B.   The Halliburton Dispute Resolution Program ................................. 3

      C.   Plaintiffs' Breach of Their Agreements to Arbitrate ...................... 4

III.    Argument ................................................................................................. 4

      A.   Plaintiffs' Agreements to Arbitrate Are Enforceable under
          The Federal Arbitration Act. .......................................................... 4

              1.   Plaintiffs' Employment Relationship With Halliburton
                  Involved Commerce. ............................................................ 5

              2.   The Arbitration Agreements Between the Parties' Are
                  Valid Under General Principles of Contract Law. ................ 6

      B.   Plaintiffs' Claims Are Within the Scope of the Parties Agreement. ................... 10

      C.   Halliburton is Entitled to an Order Compelling Plaintiffs to
          Arbitrate Their Claims ................................................................... 11

IV.     Conclusion .............................................................................................. 12

Certificate of Service ........................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

Alford v. Dean Witter Reynolds, 975 F.2d 1161 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 11

Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . 5

Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101 (La. 1988) . . . . . . . . . . . . . . . . . . 6

Circuit City Stores, Inc. v. Adams, 121 S. Ct. 1302 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Crescionne v. Louisiana State Police Ret. Bd., 455 So. 2d 1362 (La. 1984) . . . . . . . . . . . . . . . 9

Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Doctor's Assocs. Inc. v. Casarotto, 517 U.S. 681, 116 S. Ct. 16527 (1996) . . . . . . . . . . . . . . 5-6

Fairbanks v. Tulane Univ., 731 So.2d 983 (La. App. 4 Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 6-7

Fleming v. Borden, Inc., 450 S.E. 2d 589 (S.C. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Certified Question (Bankey v. Storer Broad. Co.), 443 N.W. 2d 112 (Mich. 1989) . . . . . . 7

In re Halliburton Company, 80 S.W. 3d 566 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

M&I Elec. Indus., Inc. v. Rapistan Demag Corp., 814 F. Supp. 545 (E.D. Tex. 1993) . . . . . . . . 8

Moses H. Cone Memorial Hosp. v. Mercury Constr. Co., 460 U.S. 1 (1983) . . . . . . . . . . . . . . 10

Perry v. Thomas, 482 U.S. 483 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pine River State Bank v. Mettille, 333 N.W. 2d 622 (Minn. 1983) . . . . . . . . . . . . . . . . . . . . . . 7

Ramirez v. Fair Grounds Corp., 575 So.2d 811 (La. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sea-Land Service, Inc. v. Sea-Land of P.R., Inc., 636 F. Supp. 750 (D.P.R. 1986) . . . . . . . . . . 11

Shearson Lehman v. McKay, 763 S.W. 2d 934 (Tex. App. - San Antonio
        1989, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Stieber v. Journal Publishing Co.</u>, 901 P. 2d 201 (N.M. App. 1995) . . . . . . . . . . . . . . . . . . . . . . 7

<u>Thompson v. St. Regis Paper Co.</u>, 685 P. 2d 1081 (Wash. 1984) . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Valero Ref., Inc. v. M/T Lauberhorn</u>, 813 F.2d 60 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . 8

<u>Walker v. Air Liquide Corp.</u>, 113 F. Supp. 2d 983 (M.D. La. 2000) . . . . . . . . . . . . . . . . . . . . . 9

<u>Wall v. Tulane Univ.</u>, 499 So.2d 375 (La. App. 4 Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

**<u>Statutes and Other Authorities</u>**

Fair Labor Standards Act, 29 U.S.C. § 207(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Arbitration Act, 9 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

Federal Arbitration Act, 9 U.S.C. §§ 3-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Louisiana Civil Code article 1927 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

iii

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| TROY J. LEMAIRE and | § | CIVIL ACTION NO. CV02-2005-L0 |
| JOSEPH C. ROBERTS, JR. | § | |
| | § | |
| VS. | § | JUDGE DOHERTY |
| | § | |
| HALLIBURTON ENERGY SERVICES, | § | |
| INC. | § | MAG. JUDGE HILL |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS

Defendant, Halliburton Energy Services, Inc. ("Halliburton"), moves to compel arbitration and to dismiss or stay these proceedings, as follows:

### I. Introduction

Plaintiffs Troy Lemaire and Joseph Roberts are former employees of Halliburton. During their employment, Plaintiffs agreed to arbitrate all claims arising from, or related to, their employment with Halliburton. By bringing suit against Halliburton, Plaintiffs are in violation of their valid agreements to arbitrate which encompass all claims they assert in this action. Accordingly, Halliburton requests that the Court grant its Motion, order Plaintiffs to arbitrate their claims, and dismiss or stay this proceeding pending Plaintiffs' compliance with their agreements to arbitrate.

### II. Facts

**A.**   **Plaintiffs' Employment With Halliburton and Their Agreements to Arbitrate Pursuant to the Halliburton Dispute Resolution Program.**

Halliburton is a diversified energy and construction company that has its principal place of business in Houston, Texas.  (Exhibit A, Declaration of Gary Humble)  Plaintiffs were employed by Halliburton, through its subsidiary Baroid, at a "stock point" in Freshwater City,

Louisiana. (*Id.*, ¶ 2) From this facility, Plaintiffs were responsible for the loading and unloading of supplies and equipment that was destined for, or being returned from, offshore oil rigs and platforms. (*Id.*) Halliburton serviced numerous clients from this stock point including the international oil company Exxon. (*Id.*, ¶ 3) In addition, Halliburton's Houston office provided administrative support to this operation including, for example, human resources support. (*Id.*, ¶ 4)

In August 1999, Halliburton notified Plaintiffs that, effective August 15, 1999, their employment would be governed by the Halliburton Dispute Resolution Program ("Program"). (Exhibit B, Affidavit of Melinda Miner; Exhibit C, Affidavit of Stephen Davison; and Exhibit D, Affidavit of Ron Garrow) Halliburton informed Plaintiffs of this modification to the terms of their employment by mailing a packet of descriptive materials about the Program to their home addresses. (Exhibits B-D; Attachments 1-5 to Exhibit C) These mailings were not returned to Halliburton. (Exhibit B)

The packet mailed to Plaintiffs contained several documents that outlined the various aspects of the Program. The documents provided also explained that Plaintiffs' decision to continue employment with Halliburton after receipt of the materials constituted their acceptance to abide by the Program, including its mandatory arbitration component. For example, the cover letter signed by Halliburton's C.E.O. advised employees that "Your decision to accept employment or continue your employment after August 15, 1999 will mean that you have agreed to and are bound by the terms of this Program . . . ." (Attachment 1 to Exhibit C) This letter urged employees to "**PLEASE TAKE THE TIME TO READ THESE MATERIALS.**" (*Id.* (emphasis in original)).

The descriptive brochure likewise states:

> Halliburton has adopted this four-option program as the exclusive means of resolving workplace disputes for legally protected rights.   In adopting the program, Halliburton agrees also to use the program to resolve *all* workplace disputes.   Similarly, an employee who accepts or continues employment at Halliburton, by accepting compensation for employment, agrees to resolve all legal claims against Halliburton or any other Halliburton entity . . . through this process rather than through the court system.   If an employee files a lawsuit against Halliburton or any of the parties listed above, Halliburton will ask the court to dismiss the lawsuit and refer it to the Dispute Resolution Program.   . . .

(Attachment 3 to Exhibit C at 6)   The brochure later reiterates this point, stating, in bold print:

> If an employee accepts or continues employment with any Halliburton company, the employee and Halliburton thereby agree to all provisions of the Dispute Resolution Program.   This includes the requirement that any legal dispute not resolved through Options 1, 2, or 3 be submitted to final and binding arbitration rather than through the courts or to a jury.

After receiving these materials, Plaintiffs continued to work for Halliburton until the Spring of 2002.[1]   (Complaint, ¶ 7; Exhibit B)

## B.   The Halliburton Dispute Resolution Program.

The Program provides an effective, fair, and efficient means of finally resolving any dispute that may arise from the employment or termination of employment of any employee. The Program provides, as the final step, for final and binding arbitration before an independent and impartial arbitrator appointed by the American Arbitration Association or another independent dispute resolution association.   (Attachment 2 to Exhibit C at 8-18).   The Program Rules provide for formal evidentiary hearings with the right to call and cross-examine witnesses, issuance of subpoenas by the arbitrator, and pre-hearing discovery, under the general supervision of the arbitrator, consistent with the Federal Rules of Civil Procedure. (*Id.* at 11-15).

The Program not only permits representation by legal counsel at the option of the employee, but also provides that employees may recover attorneys' fees if they receive an

---

[1] Lemaire's employment terminated in March 2002 and Roberts' employment terminated in February 2002.

3

arbitration award in their favor (even in the absence of statutory authorization for an award of fees).  (*Id.* at 6).  In addition, Halliburton maintains an Employment Legal Consultation Plan that provides an employee up to $2,500 in fees and expenses for legal services used to resolve a work-related complaint under the Program, whether or not the employee ultimately receives an arbitration award in his or her favor.  (Attachment 3 to Exhibit C at 12, 15).

Significantly, the Program imposes no restriction on, or other modification of, an employee's substantive legal rights and places no limitation on available remedies.  (Attachment 2 to Exhibit C at 5-6).  Rule 30 of the Dispute Resolution Rules provides

> The arbitrator's authority shall be limited to the resolution of legal Disputes between the Parties.  As such, the arbitrator shall be bound by and shall apply applicable law including the allocation of the burden of proof as well as substantive law.  The arbitrator shall not have the authority to either abridge or enlarge substantive rights available under existing law.

(*Id.* at 15-16)  The Program brochure similarly explains that, "in arbitration, it's possible for you to seek or receive any award you might seek through the court system."  (Attachment 3 to Exhibit C at 18).  Thus, Halliburton employees can obtain the same relief in arbitration that they can in court.

**C.      Plaintiffs' Breach of Their Agreements to Arbitrate.**

Plaintiffs filed this suit against Halliburton on August 13, 2002.  Halliburton has contacted Plaintiffs' counsel to advise him of Plaintiffs' arbitration agreement and request compliance.  Plaintiffs have refused to comply with the terms of their agreement.

### III. Argument

**A.      Plaintiffs' Agreements to Arbitrate Are Enforceable under the Federal Arbitration Act.**

Section 2 of the Federal Arbitration Act provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Thus, the FAA mandates the enforcement of arbitration agreements where such agreements (1) are part of a contract or transaction involving commerce and (2) are valid under general principles of contract law. *Id.; Doctor's Associates, Inc. v. Casarotto*, 116 S. Ct. 1652, 1657 (1996). The arbitration agreements between Plaintiffs and Halliburton satisfy both requirements and are, therefore, enforceable under the FAA.

### 1.    Plaintiffs' Employment Relationship With Halliburton Involved Commerce.

The United States Supreme Court has held that the FAA's reference to commerce in Section 2 reflects Congress' intent to extend the FAA's coverage to the limits of federal power under the Commerce Clause. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995). In so holding, the Court recognized that the determination of whether a transaction or contract "involves" commerce requires an expansive construction of the term in order to effectuate Congress' goal of encouraging alternative dispute resolution mechanisms. *Id.* Accordingly, the Court held that a matter "involves" commerce under the FAA if it merely "affects" commerce, a standard commonly applied by the court to situations in which it is clear that Congress intended to exercise its Commerce Clause powers to the fullest extent. *Id.* Furthermore, the FAA's coverage extends to employment contracts that involve such commerce. *Circuit City Stores, Inc. v. Adams*, 121 S. Ct. 1302 (2001).

Plaintiffs' employment relationship with Halliburton involved and affected interstate commerce.[2]   Halliburton is an international company with its principal place of business in

_____

[2] By bringing suit under the Fair Labor Standards Act, Plaintiffs necessarily concede this point as the FLSA applies only to employment enterprises that affect interstate commerce. 29 U.S.C § 207(a).

5

Texas.  (Exhibit A)  Plaintiffs were employed in Louisiana at a "stock point" where Halliburton loaded and unloaded supplies and equipment for offshore oil operations including for such companies as Exxon.  (*Id*)  This operation received administrative support from Halliburton's Houston, Texas office.  (*Id.*)  Accordingly, Plaintiffs' employment with Halliburton involved and affected interstate commerce.

### 2. The Arbitration Agreements Between the Parties Are Valid Under General Principles of Contract Law.

The validity of an arbitration agreement is determined by reference to general principles of contract law.  *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996); *see also Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (noting that "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally").  However, to the extent that state law carves out special rules for arbitration agreements that do not apply generally to all contracts, it is "inconsonant with, and is therefore preempted by, the federal [act]."  *Doctor's Assocs.*, 517 U.S. at 688.

The agreements between Plaintiffs and Halliburton are valid under generally applicable principles of Louisiana contract law.  Plaintiffs' employment relationship with Halliburton was at will.  *See, e.g., Brannan v. Wyeth Laboratories, Inc.*, 526 So. 2d 1101, 1103 (La. 1988) (noting the presumption of at will employment).  That is, both Plaintiffs and Halliburton were free to terminate the relationship at any time, for any lawful reason.  *Id.*  Accordingly, in Louisiana, as in most states, an employer may prospectively modify the terms and conditions that apply to its at will employees.  Once an employer provides its at will employees clear notice of the impending change, the employee is deemed to have accepted that change if he continues to work thereafter.  *Fairbanks v. Tulane Univ.*, 731 So.2d 983 (La. App. 4 Cir. 1999);  *Wall v. Tulane Univ.*, 499 So.2d 375 (La. App. 4 Cir. 1986).

For example, in *Wall*, the plaintiff sued his former employer, Tulane, contending that Tulane was prohibited from amending its tuition waiver policy for employees of the university. The court rejected this argument on the grounds that the plaintiff had been employed at will. Because Tulane was entitled to terminate his employment at any time, it was similarly entitled to modify the benefits associated with that employment at any time. *Id.* at 375. In *Fairbanks*, the court affirmed the principle articulated in *Wall*, noting that, in the context of at will employment, an employer "could terminate . . . employment or modify the benefits of that employment at any time." *Id.* at 9.

In this respect, Louisiana is not unique. The consensus among states that have addressed this issue is that, as a fundamental matter of contract law, the terms of an at will employment relationship can be modified prospectively where the employer provides clear notice of the impending change and the employees so notified continue to work thereafter. The Texas Supreme Court, for example, recently held that Halliburton and an employee entered into a valid contract to arbitrate under precisely the same circumstances at issue in this case. In *In re Halliburton Company*, 80 S.W.3d 566 (Tex. 2002), an employee challenged the enforceability of the Program notwithstanding his receipt, by mail, of various Program materials notifying him that his decision to continue employment thereafter would constitute his acceptance of the terms of the Program. The court concluded that Halliburton's mailing of the Program materials to the plaintiff was an offer which was accepted when the plaintiff continued to work after notification. Therefore, under Texas legal principles analogous to those discussed in *Wall* and *Fairbanks*, the parties formed a valid and enforceable contract. *Id.* at 568-69.[3]

---

[3]*See also, Stieber v. Journal Publishing Co.*, 901 P.2d 201, 204 (N.M. App. 1995); *Fleming v. Borden, Inc.*, 450 S.E.2d 589, 595 (S.C. 1994); *In re Certified Question (Bankey v. Storer Broad. Co.)*, 443 N.W.2d 112, 120 (Mich.1989); *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1087 (Wash. 1984); *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn. 1983).

Likewise, Halliburton provided Plaintiffs with unequivocal notice that a condition of their continued employment was their agreement to abide by the company's Dispute Resolution Program as the exclusive means to resolve any employment disputes.[4]  By choosing to continue their employment with Halliburton after receiving this unequivocal notice, Plaintiffs agreed to this condition as a matter of law.  Accordingly, under Louisiana law, Plaintiffs and Halliburton entered into an enforceable agreement to arbitrate.

The FAA does not require that the arbitration agreement be signed provided that the agreement is in writing.  *See, e.g., Shearson Lehman v. McKay*, 763 S.W.2d 934, 937 (Tex. App. – San Antonio 1989, no writ); *Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60 (5th Cir. 1987); *M&I Elec. Indus., Inc. v. Rapistan Demag Corp.*, 814 F. Supp. 545, 547 (E.D. Tex. 1993).  To the extent that Plaintiffs may rely on the comments to article 1927 of the Louisiana Civil Code for the contrary proposition, this argument is misplaced.

Article 1927, entitled "Consent," states:

A contract is formed by the consent of the parties through offer and acceptance.

Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.

Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.

La. Civ. Code Art. 1927.  This statutory provision is unambiguous.  An offer can be accepted in any manner indicative of acceptance unless the offer states otherwise.  Halliburton's offer to arbitrate all employment claims with Plaintiffs did not require that Plaintiffs respond in writing.  To the contrary, Halliburton expressly contemplated that Plaintiffs' acceptance or rejection of its

---

[4]As noted *supra*, the Program brochure mailed to Plaintiffs stated: "If an employee accepts or continues employment with any Halliburton company, the employee and Halliburton thereby agree to all provisions of the Dispute Resolution Program."  (Attachment 3 to Exhibit C at 20; *see also id.* at 6).

8

offer would be determined by the Plaintiffs' action, *i.e.*, whether they continued to work for Halliburton after receiving the offer.  ("<u>If an employee</u> . . . <u>continues employment</u> with any Halliburton Company, the employee and Halliburton thereby agree . . . that any legal dispute . . . be submitted to final and binding arbitration rather than through the courts or to a jury." (Attachment 3 to Exhibit C at 20 (emphasis added); *see also*, Attachment 1 to Exhibit C (same)) Under the plain language of art. 1927, Plaintiffs' action was indicative of consent and formed a valid arbitration agreement.

The comments to article 1927[5] are immaterial and should be disregarded.   Under Louisiana law, the comments to a statutory provision are not part of the law and not controlling authority. *Ramirez v. Fair Grounds Corp.*, 575 So.2d 811, 813 (La. 1991). Moreover, comments should not be considered, even as persuasive authority, unless the statutory provision in question is ambiguous. *Id.*  The Louisiana Supreme Court addressed this specific issue in connection with Louisiana Act 331 of 1984, which enacted article 1927, explaining:

> [B]ecause this statute is clear and unambiguous with respect to the issue in this case, and its application does not lead to absurd consequences, it shall be applied as written and no further interpretation may be made of it in search of the intent of the legislature.  La Civ. Code art. 9.  Accordingly, there is no justification for our considering the comments even as persuasive sources or interpretive aids in the present case.

*Id.  See also, Crescionne v. Louisiana State Police Ret. Bd.*, 455 So.2d 1362, 1364 (La. 1984) (holding that "when a statute is clear and unambiguous, this court is bound to apply it as it is written and it is for the legislature to amend the statute if it is inequitable.").  Article 1927 is clear as written and its literal interpretation does not produce absurd results.  Thus, under its

---

[5]Comment b to art. 1927 states that "this Article reflects the view of the Louisiana jurisprudence that when special formalities are prescribed for a contract the same formalities are required for an offer or acceptance intended to form that contract."  In *Walker v. Air Liquide Corp.*, 113 F. Supp.2d 983 (M.D. La. 2000), the court refused to enforce an arbitration agreement, citing to this comment.  In reaching this conclusion, the court did not find that article 1927 was ambiguous or otherwise explain the reason for its citation to the comment.  In light of the clarity of art. 1927, Halliburton respectfully suggests that *Walker* was incorrectly decided.

plain language, a party offered an arbitration agreement is free to accept "orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent."  In this case, Plaintiffs so accepted by continuing their employment.

**B.   Plaintiffs' Claims Are Within the Scope of the Parties' Agreement.**

The Halliburton Dispute Resolution Program clearly defines the categories of claims or issues to which it applies.  In particular, the Program applies to any claim that:

> relates to, arises from, concerns, or involves in any way:
>
> . . .
>
> 2.      the employment . . . of an Employee, including the compensation, terms, conditions, or termination of such employment with the Company;
>
> . . .
>
> 4.      any other matter related to or concerning the relationship between the Employee and the Company . . .

(Attachment 2 to Exhibit C at 2)

Plaintiffs' claims arise directly from their employment relationships with Halliburton and specifically, their compensation during their employment.   Moreover, if there was any uncertainty as to whether Plaintiffs' claims are covered by the Program, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including under circumstances where the issue is the construction of the contract language.  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983).   Given the broad ambit of the contractual language, and the presumption favoring arbitration, Plaintiffs' claims are within the scope of their arbitration agreements.

**C.      Halliburton is Entitled to an Order Compelling Plaintiffs to Arbitrate Their Claims.**

Section 4 of the Federal Arbitration Act provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4;  *Alford v. Dean Witter Reynolds*, 975 F.2d 1161, 1164 (5th Cir. 1992).  The FAA leaves no discretion to the court about whether to require arbitration; rather, it mandates that courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement exists.  9 U.S.C. §§ 3, 4.  Valid agreements to arbitrate must be enforced. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

In this case, the indisputable facts demonstrate that (1) Plaintiffs and Halliburton entered into agreements to arbitrate, (2) the agreements encompass Plaintiffs' claims against Halliburton, and (3) Plaintiffs have refused to honor their obligations under the agreements.   Thus, Halliburton is entitled, under the FAA, to an order compelling Plaintiffs to pursue their claims, if at all, through arbitration under the terms and conditions of the Program.

Moreover, because all of the claims raised by Plaintiffs are subject to arbitration, dismissal is the appropriate remedy.  As the Fifth Circuit noted in *Alford v. Dean Witter Reynolds*, 975 F.2d 1161, 1164 (5th Cir. 1992),

> Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.  Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in a limited manner prescribed by law.

*Id.* (quoting *Sea-Land Service, Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp 750, 757 (D.P.R. 1986)).

11

## IV. Conclusion

For the foregoing reasons, Halliburton Energy Services, Inc. requests that the Court compel Plaintiffs to arbitrate their claims against it and that this lawsuit be stayed or dismissed pending such arbitration.

Respectfully submitted,

CHARLES H. HOLLIS     (La. #06961)
SAMUEL ZURIK III, T.A.   (La. #24716)
BENJAMIN H. BANTA     (La. #24289)
**THE KULLMAN FIRM**
1100 Poydras Street, Suite 1600
New Orleans, LA  70163
Telephone:  (504) 524-4162
Facsimile:  (504) 596-4114

ATTORNEYS FOR DEFENDANT,
HALLIBURTON ENERGY SERVICES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on November _/8_ , 2002, a copy of the foregoing Defendant's

Motion to Compel Arbitration and to Dismiss or Stay Proceedings, Memorandum in Support,

and proposed Order have been served on all parties by placing same in overnight mail addressed

as follows:

> Leonard Knapp, Jr.
> A Professional Law Corporation
> P.O. Box 1665
> 130 Broad Street
> Lake Charles, Louisiana 70601

RECEIVED

NOV 1 9 2002

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE/OPELOUSAS DIVISION

| | | |
|---|---|---|
| TROY J. LEMAIRE and | § | CIVIL ACTION NO. CV02-2005-LO |
| JOSEPH C. ROBERTS, JR. | § | |
| | § | |
| VS. | § | JUDGE DOHERTY |
| | § | |
| HALLIBURTON ENERGY SERVICES, | § | MAG. JUDGE HILL |
| INC. | § | |

## ORDER

Considering Defendant's Motion to Compel Arbitration and to Dismiss or Stay Proceedings;

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendant's Motion to Compel

Arbitration and to Dismiss or Stay Proceedings is **GRANTED** and that Plaintiffs' claims against

Halliburton Energy Services, Inc. are _____

Lafayette, Louisiana, this ___ day of _____, 2002.


_____
JUDGE

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE  DIVISION

### NOTICE OF DOCUMENTATION NOT FILED IN RECORD

**CASE# 02-2005**

**TROY J. LEMAIRE, ET AL**

    **VS.**

**HALLIBURTON ENERGY SERVICES, INC.**

**ATTACHMENTS TO:**

    **DOCUMENT#:   9**

    **DESCRIPTION:  DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS**

    **FILED BY:   HALLIBURTON ENERGY SERVICES**

    **FILE DATE:   NOVEMBER 19, 2002**

**HAVE BEEN PLACED IN AN ACCORDIAN FOLDER**

                           **KAREN FRANKLIN**

                               **DEPUTY CLERK**

*Order*

**THE KULLMAN FIRM**
A PROFESSIONAL LAW CORPORATION

1600 ENERGY CENTRE
1100 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70163

MAILING ADDRESS
POST OFFICE BOX 60118
NEW ORLEANS, LOUISIANA 70160

(504) 524-4162

SAMUEL ZURIK III

DIRECT DIAL: 504-596.4189

**RECEIVED**

NOV 1 9 2002

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

November 18, 2002

**via Federal Express**

Robert H. Shemwell
Clerk, United States District Court
Western District of Louisiana
300 Fannin Street, Suite 1167
Shreveport, Louisiana 71101-3083

Re:   *Troy Lemaire and Joseph C. Roberts, Jr. v. Halliburton Energy Services, Inc.*
       **Case No. CV02-005-L0, Judge Doherty, Magistrate Judge Hill**

Dear Mr. Shemwell:

I have enclosed the original and three copies of Defendant's Motion to Compel Arbitration and to Dismiss or Stay Proceedings, Memorandum in Support, and proposed Order, which we are filing on behalf of Halliburton Energy Services, Inc.

Please return a time-stamped copy in the enclosed envelope. Thank you for your assistance, and if you have any questions, please call.

Sincerely yours,

Samuel Zurik III

SZIII/lmc
Enclosures
cc:   Honorable Rebecca F. Doherty, Judge (w/enc.)
cc:   Leonard Knapp, Jr. (w/enc.)
cc:   W. Carl Jordan (w/enc.)
cc:   Vanessa Clem (w/enc.)

*Done*
*CMH*

| | | | |
|---|---|---|---|
| SUITE 340 | SUITE 505 | SUITE 2160 | SUITE 700 |
| 600 UNIVERSITY PARK PLACE | COURT SQUARE TOWERS | AmSOUTH PLAZA | 5350 POPLAR AVENUE |
| BIRMINGHAM, ALABAMA 35209 | 605 2ND AVENUE NORTH | 210 EAST CAPITOL STREET | MEMPHIS, TENNESSEE 38119 |
| (205) 871-5858 | COLUMBUS, MISSISSIPPI 39701 | JACKSON, MISSISSIPPI 39201 | (901) 763-1771 |
| | (662) 244-8824 | (601) 355-1994 | |